WALSH, APPELLANT, *v.* HOSKINS ET AL., DEFENDANTS; MONTANA COAL & IRON CO., RESPONDENT.

(No. 3,725.)

(Submitted November 27, 1916.   Decided January 26, 1917.)

[162 Pac. 960.]

*Attorney and Client — Attorney's Lien — Notice — Laches — Appeal and Error—Law of Case—Findings—Equity—Power of Supreme Court.*

Appeal and Error—Law of the Case.
   1.   To the extent that the facts presented upon the retrial of a cause were before the supreme court on a previous appeal, its decision then made was the law of the case, binding alike upon the trial and appellate courts.

Trial—Immaterial Findings.
   2.   A finding not responsive to any issue involved in the case is immaterial.

Attorney and Client—Attorney's Lien—Notice.
   3.   Section 6422, Revised Codes, giving an attorney a lien upon his client's cause of action, is notice to the world; hence the attorney is not required to give notice.

Same—Settlement—Complaint—Findings—Immateriality.
   4.   Since, under section 6422, Revised Codes, an attorney's lien cannot be affected by any settlement between the parties before or after judgment, a finding in an action by an attorney on such a lien, that defendant had no intention to defeat the lien by making final payment,

under a contract of sale in a bank other than the one fixed therein, was immaterial, as was also an allegation in the complaint that they had such intention.

Equity—Appeal—Findings—Power of Supreme Court.
5. In an equity suit in which the evidence is all before the supreme court, it may, under section 6253, Revised Codes, determine a fact on which the trial court failed to make a finding.

Attorney and Client—Attorney's Lien—Assertion, When.
6. An attorney may, independently of his client, assert his lien prior to judgment or settlement.

[As to lien of attorneys, see note in 51 Am. St. Rep. 251.]

Same—Assertion of Lien—Laches.
7. An attorney who acted promptly in asserting his lien upon discovery of a violation of a settlement agreement relative to litigation conducted by him, under the terms of which all moneys were to be and were paid into a home bank to the credit of his clients, except the last installment which, contrary to the agreement, was placed in a bank outside the state, was not chargeable with laches.

Same—Settlement—Assignees—Notice of Lien.
8. Though, as between attorney and client, the latter controls the course of litigation, including its settlement, the parties making the settlement, as well as their assignees, are chargeable with notice of the former's statutory lien.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by James A. Walsh against Omar and Maggie Hoskins, and the Montana Coal & Iron Company. From a judgment for the answering defendant corporation and an order denying his motion for new trial, plaintiff appeals. Reversed and cause remanded, with directions.

*Mr. Jas. A. Walsh, pro se,* and *Mr. Wm. T. Pigott,* of Counsel, submitted a brief in behalf of Appellant; *Mr. Walsh* argued the cause orally.

Under section 6422, Revised Codes, plaintiff had a lien on the two causes of action, and on any verdict, decision or judgment, and the proceeds thereof, into whosoever hands they might come, which could not be affected by any settlement between the parties. (*Coombe* v. *Knox,* 28 Mont. 202, 72 Pac. 641; *Gilchrist* v. *Hore,* 34 Mont. 443, 87 Pac. 443; *Oishei* v. *Metropolitan Street Ry. Co.,* 110 App. Div. 709, 97 N. Y. Supp. 447; *Fischer-Hansen* v. *Brooklyn Heights R. Co.,* 173 N. Y. 492, 66 N. E. 395; *Rachels*

v. *Doniphan Lumber Co.*, 98 Ark. 529, 136 S. W. 658; *Smoot* v. *Shy*, 159 Mo. App. 126, 139 S. W. 239; *Fillmore* v. *Wells*, 10 Colo. 228, 3 Am. St. Rep. 567, 15 Pac. 343; *Strohecker* v. *Irvine*, 76 Ga. 639, 2 Am. St. Rep. 62; *Hobson* v. *Watson*, 34 Me. 20, 56 Am. Dec. 632; *Weed Sewing Mach. Co.* v. *Boutelle*, 56 Vt. 570, 48 Am. Rep. 821; *Porter* v. *Hanson*, 36 Ark. 591, 604.)

The conclusion of law that plaintiff's lien could never attach to any specific property is unsupported by evidence, and unsustained by any authority. If the land had been recovered, the lien would attach to the land. (*Grant* v. *Lookout Mountain Co.*, 93 Tenn. 691, 27 L. R. A. 98, 28 S. W. 90; *Boring* v. *Jobe* (Tenn. Ch.), 53 S. W. 763; *Hill* v. *Hill* (Tenn. Ch.), 62 S. W. 209; *Loofbourow* v. *Hicks*, 24 Utah, 49, 55 L. R. A. 874, 66 Pac. 602; *Fillmore* v. *Wells*, 10 Colo. 228, 3 Am. St. Rep. 567, 15 Pac. 343; *McCain* v. *Portis*, 42 Ark. 402; *McLean* v. *Lerch*, 105 Tenn. 693, 58 S. W. 640; *Fitzgerald's Ex'x* v. *Irby*, 99 Va. 81, 37 S. E. 777; *McIntosh* v. *Bach*, 110 Ky. 701, 62 S. W. 515.)

Our Code does not require any notice to be given or filed to protect the lien. It is a statutory lien of which the world must take notice. (*Oishei* v. *Metropolitan St. Ry. Co.*, *supra;* *Wait* v. *Atchison, T. & S. F. R. Co.*, 204 Mo. 491, 103 S. W. 60; *Whitwell* v. *City of Aurora*, 139 Mo. App. 597, 123 S. W. 1045; *Brown* v. *Morgan*, 163 Fed. 395; *Taylor* v. *St. Louis Transit Co.*, 198 Mo. 715, 97 S. W. 155.)

The court may foreclose a lien, and award judgment against the defendant, Montana Coal & Iron Company, for a deficiency. (*Oishei* v. *Pennsylvania R. Co.*, 117 App. Div. 110, 102 N. Y. Supp. 368, 191 N. Y. 544, 85 N. E. 1113; *Carter* v. *Chicago, B. & Q. R. Co.*, 136 Mo. App. 719, 119 S. W. 35; *Farmer* v. *Stillwater Water Co.* (*In re Nethaway*), 108 Minn. 41, 121 N. W. 418; *Northrup* v. *Hayward*, 102 Minn. 307, 12 Ann. Cas. 341, 113 N. W. 701; *Barthell* v. *Chicago, M. & St. P. R. Co.*, 138 Iowa, 688, 116 N. W. 813.) Hence the defendant, Montana Coal & Iron Company, is personally responsible for the amount of plaintiff's fee.

The respondent Smith or Moss could not, by any agreement with the Hoskins, by settling with them, changing the agreement deposited in the bank, paying the money at Portland, or other act, without the consent of the plaintiff, defeat plaintiff's lien upon the proceeds of the causes of action and the papers deposited in the bank. (*Lovett* v. *Moore,* 98 Ga. 158, 26 S. E. 498; *Fry* v. *Calder,* 74 Ga. 7; *Bent* v. *Lipscomb,* 45 W. Va. 183, 72 Am. St. Rep. 815, 31 S. E. 907; *Hubble* v. *Dunlap,* 101 Ky. 419, 41 S. W. 432; *Davidson* v. *Board of Commrs.,* 26 Colo. 549, 59 Pac. 46; *Lee* v. *Vacuum Oil Co.,* 126 N. Y. 579, 27 N. E. 1018; *Stearns* v. *Wollenberg,* 51 Or. 88, 14 L. R. A. (n. s.) 1095, 92 Pac. 1079; *Cain* v. *Hockensmith, W. & Car Co.,* 157 Fed. 992; *Meighan* v. *American Grass Twine Co.,* 154 Fed. 346, 83 C. C. A. 124.)

*Messrs. Goddard & Clark* and *Messrs. Johnston & Coleman,* for Respondent, submitted a brief; *Mr. O. F. Goddard* argued the cause orally.

While an attorney's lien attaches from the commencement of the action to the cause of action and to the resulting verdict, judgment, decree, *etc.,* it is not such a right as an attorney can assert independent of his client prior to judgment or settlement. The attorney cannot, against the will of the client, control the litigation, or interfere with the settlement thereof. The right of the attorney is derived from and through his client, and must be a part of the right of the client. (*Lee* v. *Vacuum Oil Co.,* 126 N. Y. 579, 27 N. E. 1018; *Peri* v. *New York Cent. etc. R. Co.,* 152 N. Y. 521, 46 N. E. 849; *Fischer-Hansen* v. *Brooklyn Heights R. Co.,* 173 N. Y. 492, 66 N. E. 395; *Schoenherr* v. *Van Meter,* 215 N. Y. 548, 109 N. E. 625; *In re Meighan,* 106 App. Div. 599, 94 N. Y. Supp. 1153, 182 N. Y. 558, 75 N. E. 1131; *Laughlin* v. *Excelsior Powder Mfg. Co.,* 153 Mo. App. 508, 134 S. W. 116.)

Counsel make the statement that, independent of the statute, an attorney has a lien upon all papers belonging to his client that come into his hands during his employment. This is true,.

but there can be no question that this possessory lien continues only while the attorney maintains possession thereof. (*Gottstein* v. *Harrington,* 25 Wash. 508, 65 Pac. 753; 4 Cyc. 1012 (c.); 3 Am. & Eng. Ency. of Law, 2d ed., 456; 2 R. C. L., p. 1067.)

Where there is a settlement of a claim in litigation before judgment, the client receiving consideration therefor, the opposing party, by the settlement, recognizes the claim and becomes personally liable to the attorney to the extent of his interest, and payments made to the client without the consent of the attorney are made at the peril of the one making the payment. (*Fischer-Hansen* v. *Brooklyn Heights R. Co., supra; Smoot* v. *Shy,* 159 Mo. App. 126, 139 S. W. 239; *Dreiband* v. *Candler,* 166 Mich. 49, 131 N. W. 129.)

An attorney may by his words, acts or conduct, waive his lien and estop himself from claiming the same. (*Fillmore* v. *Wells,* 10 Colo. 220, 3 Am. St. Rep. 567, 15 Pac. 343; *McClare* v. *Lockard,* 121 N. Y. 308, 24 N. E. 453; *Hektograph Co.* v. *Fourl,* 11 Fed. 844; *Barnabee* v. *Holmes,* 115 Iowa, 581, 88 N. W. 1098; *West* v. *Bacon,* 164 N. Y. 425, 58 N. E. 522; *Winans* v. *Grable,* 18 S. D. 182, 99 N. W. 1110; *German* v. *Browne,* 137 Ala. 429, 34 South. 985; *Fargo* v. *Paul,* 35 Misc. Rep. 568, 72 N. Y. Supp. 21; *Cantrell* v. *Ford* (Tenn. Ch.), 46 S. W. 581; *Renick* v. *Ludington,* 16 W. Va. 378; *Whitehead* v. *Jessup,* 7 Colo. App. 460, 43 Pac. 1042; *Fulton* v. *Harrington,* 7 Houst. (Del.) 182, 30 Atl. 856.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This cause was before this court on a former appeal. (*Walsh* v. *Hoskins,* 46 Mont. 356, 128 Pac. 589.) We held that the complaint states a cause of action and remanded the case for further proceedings. There was no personal service upon, or appearance by, Omar or Maggie Hoskins. The defendant Montana Coal & Iron Company answered, admitting some of the allegations of the complaint and denying others. The trial re-

sulted in a judgment for the answering defendant, and plaintiff appeals. A statement of the case precedes our former opinion, and need not be repeated here.

To the extent that the facts presented to the lower court [1] were before this court on the former appeal, our former decision became the law of the case, binding alike upon this court and the court below. (*Davenport* v. *Kleinschmidt,* 8 Mont. 467, 20 Pac. 823; *Neary* v. *Northern Pac. R. Co.,* 41 Mont. 480, 110 Pac. 226.) In determining that the complaint states a cause of action, we considered the following allegations: That · plaintiff, an attorney at law, was employed by Omar Hoskins to commence an action in the district court against the Montana Coal & Iron Company and others, the character of the action being set forth fully; that he was also employed by Omar and Maggie Hoskins to commence an action against Elijah Smith and the Montana Coal & Iron Company, the character of that action being likewise set forth in detail; that plaintiff commenced both actions and performed a great amount of work in connection therewith; that thereafter a settlement was effected between Omar Hoskins and Maggie Hoskins, on the one part, and P. B. Moss representing Elijah Smith and the Montana Coal & Iron Company, on the other, by the terms of which the shares of stock in the Montana Coal & Iron Company owned by Omar Hoskins were to be sold to Moss, and the two causes of action assigned to him for a consideration named and to be paid according to the settlement agreement; that the necessary documents were prepared by plaintiff to carry the agreements into effect; that these documents, consisting of the settlement agreement, the certificate of stock duly indorsed, and the assignments of the causes of action duly executed, were placed in escrow with the Farmers & Traders' State Bank of Billings, to be delivered to Moss or his assigns upon the payment of the stipulated price according to the terms of the contract; that thereafter Moss transferred all his interest to Smith and the Montana Coal & Iron Company; that it was agreed between plaintiff and Omar and Maggie Hoskins that for the services rendered by

plaintiff he should receive $3,000; $2,000 was paid, and the balance remains due and unpaid; that the payment of the last installment to Omar and Maggie Hoskins was not made according to agreement, but was made to them directly at Portland, Oregon, without the knowledge or consent of plaintiff and for the purpose of defeating plaintiff's claim for the balance due him and his lien to secure the same.

The trial court made eleven findings of fact as follows: (1) That plaintiff is an attorney, and that defendant Montana Coal & Iron Company is a corporation; (2) that plaintiff was employed by Omar Hoskins to commence the action against the Montana Coal & Iron Company and others, and did commence such action substantially as alleged in the complaint; (3) that plaintiff was also employed by Omar and Maggie Hoskins to commence the action against Elijah Smith and the Montana Coal & Iron Company as alleged, and that the settlement pleaded was effected; (4) that in the settlement plaintiff represented himself and Omar and Maggie Hoskins, and prepared the documents to be used in the settlement, that $3,000 of the settlement price was paid as alleged, and of this sum plaintiff received $2,000, and that the documents to be used in the settlement were by plaintiff and Moss deposited with the bank in escrow; (5) that plaintiff and Omar and Maggie Hoskins agreed upon plaintiff's compensation as alleged in the complaint; (6) that there is a balance of $1,000, with interest, due plaintiff; (7) that plaintiff has not performed any further services in relation to either action commenced by him for Omar and Maggie Hoskins, and the Montana Coal & Iron Company caused said actions to be dismissed; (8) that Moss transferred his interest in the settlement agreement to Elijah Smith, who transferred to the Montana Coal & Iron Company, that full payment of the settlement price has been made to Omar and Maggie Hoskins, that the last installment was paid by Elijah Smith to Omar and Maggie Hoskins at Portland, Oregon, and was accepted by them as full performance of the settlement agreement, that prior to the commencement of this action plaintiff

failed to notify Moss, Smith or the Montana Coal & Iron Company that he claimed any interest in the settlement agreement or would be affected by its performance or nonperformance, or that any portion of his compensation was due or unpaid, and that he failed to notify the bank until April 17, 1911, that said persons and corporations were ignorant of any interest or claim on the part of plaintiff, "and plaintiff by his conduct led them to believe that he had no interest therein"; (9) that for the purpose of carrying into effect the settlement agreement Omar and Maggie Hoskins agreed to the deposit of the documents with the bank, to be delivered to Moss upon the payment of the stipulated price, giving Moss the privilege to deposit the amount of the price in the bank to the credit of Omar and Maggie Hoskins; (10) that, so far as Moss, Smith and the Montana Coal & Iron Company are concerned, the payment of the final installment in Portland was not made to defeat plaintiff's lien or to prevent him from recovering any balance due him; (11) "that no part of the capital stock of the Montana Coal & Iron Company was ever the subject of litigation in the causes of action brought by plaintiff for Omar Hoskins or Maggie Hoskins."

From those facts the court drew these conclusions: "That the action brought by Maggie Hoskins was for the recovery of money only; that the action commenced by Omar Hoskins was brought for the purpose of canceling certain shares of the corporate stock, certain alleged fictitious indebtedness of the defendant company, and compelling a conveyance of certain land to said company, and therefore plaintiff's attorney's lien could never attach to any specific property; that whatever lien or interest plaintiff may at one time have had in the aforesaid causes of action, he caused to be conveyed to Preston B. Moss; that the court is without jurisdiction to render a personal judgment against Omar Hoskins or Maggie Hoskins, and therefore plaintiff is not entitled to recover in this action, and the defendant Montana Coal & Iron Company is entitled to a judgmet for its costs."

Finding No. 7 is wholly immaterial. It is not responsive to
[2]  any issue involved in the case. Plaintiff does not seek
to recover anything due him for services rendered after the
settlement agreement was effected and the documents deposited
with the bank. Neither is there a suggestion in the findings or
evidence that plaintiff abandoned his employment. His work
had been completed. The litigation had been settled, and noth-
ing further remained to be done, except the payment of the
balance of the settlement price according to the settlement
agreement.

So much of finding 8 as relates to the failure of plaintiff to
[3]  give notice of his lien or claim is likewise immaterial. The
attorney's lien sought to be established and foreclosed in this
suit is altogether the creation of the statute. (Rev. Codes, sec.
6422.) The statute itself is notice to the world of the lien, and,
in the absence of any provision requiring notice, the giving of
notice is not necessary. (*Peri* v. *New York Cent. & H. R. R.
Co.*, 152 N. Y. 521, 46 N. E. 849; *Whitwell* v. *Aurora*, 139 Mo.
App. 597, 123 S. W. 1045.)

In finding 8 the court also declares that by his conduct plain-
tiff led Moss, Smith, the bank, and the Montana Coal & Iron
Company to believe that he had no interest in the documents on
deposit in escrow with the bank. The purpose of this finding
is not clear. No conclusion of law is drawn from it; on the
contrary, the court determined that plaintiff's lien never
attached to any specific property because of the peculiar char-
acter of the actions prosecuted by him for Omar and Maggie
Hoskins, and further held that plaintiff transferred to Moss
any lien which he had upon the two causes of action. But it is
unnecessary to consider this portion of the findings further; for
there is not even a scintilla of evidence to support it.

If by the concluding clause of finding No. 9 the trial court
intended to convey the idea that payment of the deferred install-
ments of the settlement price might be made to the bank or to
Hoskins at the discretion of Moss, such finding is directly con-
trary to the evidence. Under the terms of the settlement agree-

ment the deferred payments were to be "deposited in the said bank to the credit of said Omar Hoskins and Maggie Hoskins." The place of payment was determined definitely, and there was no room for the exercise of discretion.

Finding 10 is to the effect that in making payment of the [4] final installment in Portland, it was not the intention of Moss, Smith or the Montana Coal & Iron Company to defeat plaintiff's lien. That payment was made by Smith; but it is of no consequence what his intention was in making it in Portland instead of to the Billings bank, as the agreement required. The statute provides that the attorney's lien "cannot be affected by *any* settlement between the parties before or after judgment." The allegation in the complaint that payment of the final installment was made in Portland to deprive plaintiff of his lien is not material, since it could not have been effectual for that purpose, unless plaintiff had consented, which he did not.

By finding No. 11 the court must have intended to say that the 444 shares of stock owned by Omar Hoskins were never the subject of litigation in either action brought by plaintiff for Omar and Maggie Hoskins; for finding No. 2 is to the effect that certain other shares of the capital stock of the Montana Coal & Iron Company were involved in one of those actions.

Upon the question whether the payment of the final installment was made in Portland with or without the knowledge or [5] consent of plaintiff, the court made no finding; but this being a suit in equity, and the evidence all before us, we are authorized by section 6253, Revised Codes, to determine the fact, and this can be done without difficulty. The plaintiff testified that he knew nothing whatever of the contemplated payment in Portland, and that, if he had known of it, he would not have consented, and there is not any evidence to the contrary.

Eliminating from consideration the findings herein held to be immaterial or not supported by the evidence, and supplementing the remaining findings by the fact that the final pay-

ment was made in Portland, without the knowledge or consent of plaintiff, and every material allegation of plaintiff's complaint is found to be true.

We cannot assent to the doctrine that, independently of his client, an attorney cannot assert his lien prior to judgment or [6] settlement. The statute declares that the lien attaches in favor of counsel for plaintiff from the commencement of the action. The method by which such lien may be enforced is not material in this action. There was a settlement which had the effect of a judgment for all purposes of plaintiff's lien. The settlement involved the transfer of the 444 shares of stock and the assignments of the two causes of action by Omar and Maggie Hoskins to Moss, and the payment by Moss of the stipulated price. There was not any delivery of the certificate representing these shares nor of the assignments of the causes of action, whoever may have handed them to the bank. They were in escrow, held for the benefit of all the parties in interest, including the plaintiff, who, though not nominally a party to the agreement, was interested in it, and at least tacitly consented to its terms.

In our former opinion we held that the attorney's lien attached to the documents in escrow from the time the settlement [7] was effected until final payment was made according to the terms of the agreement, unless sooner released by satisfaction or otherwise, and this upon the theory that the fruit of the litigation was the settlement agreement—not the paper evidencing it; that, since by the terms of that agreement the certificate of stock and the assignments should be held in escrow until final payment was made according to the terms of the agreement, for the time being, and until such final payment was so made, those documents took the place of the money to be realized, and constituted the security for the faithful performance of the agreement. That decision became the law of this case. Of course, if plaintiff, with knowledge that the final payment was about to be made in Portland, had acquiesced, he

could not be heard to complain now, or, if he had delayed the assertion of his claim for an unreasonable time after he became aware that the agreement had been violated, he might well be guilty of laches; but until he knew of such violation he had a right to rely upon the agreement that the money would all be paid into the bank. It was not until he became aware that the provisions of the agreement had been violated that he was called upon to act. He was without knowledge that such violation was contemplated, and he acted promptly upon discovering that the agreement had not been carried out according to its terms.

While it is elementary that the client controls the course of [8] litigation, including the settlement of it, in the sense that the attorney cannot stand in the way of a settlement which his client desires to effectuate, nevertheless the settlement, when made, is subject to the claim of the attorney, and the parties making settlement are bound to take notice of such claim. Smith and Hoskins were chargeable with notice that plaintiff's lien could not be affected by the payment of the last installment to Hoskins directly, and in making that payment as he did, Smith simply acted at his peril, and neither he nor his assignee, who stands in his shoes, can complain that plaintiff is asserting the lien which the statute gives to him.

The statement in the court's conclusions that plaintiff transferred to Moss any lien which he may have had upon the causes of action, if intended as a finding of fact, is without any evidence to support it; if intended as a conclusion of law, there is not any finding or evidence to justify it.

The two actions have been dismissed, and, since plaintiff is not asking to have the orders of dismissal set aside, the assignments of those causes of action are no longer available as security for plaintiff's lien.

The judgment and order are reversed, and the cause is remanded to the district court, with directions to modify the findings as herein indicated, and to enter a decree in favor of the plaintiff establishing his lien upon the 444 shares of stock and

the certificate representing them, and directing foreclosure and sale according to the usual course of procedure in such cases.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.

